UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 08-160-DLB

KIMBERLY S. PERKINS                                                                                        PLAINTIFF


vs.                              MEMORANDUM OPINION AND ORDER


THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA                                                                                         DEFENDANT

* * * * * * * * * * * * * * * *

Plaintiff Kimberly Siemer Perkins ("Perkins") filed the instant action against the Prudential Insurance Company of America ("Prudential") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), alleging wrongful termination of her short-term disability benefits.

Before the Court is Plaintiff's motion for judgment on the administrative record (Doc. #13). The motion has been fully briefed (Docs. #18, 21), and is now ripe for review. For the reasons set forth below, Defendant's determination that continuation of Kimberly Perkins' short-term disability benefits was unsupported by the objective medical evidence was not arbitrary and capricious. Accordingly, Plaintiff's Motion to Reverse the Administrative Record (Doc. #13) is **DENIED**.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Kimberly Siemer Perkins worked as a Maintenance Assistant at The Gap, Inc.'s ("Gap") Hebron, Kentucky location. As a maintenance assistant, Perkins was responsible

for facility upkeep, operation of warehouse equipment, and assisting maintenance mechanics with repairs. In its job description for maintenance assistants, the Gap lists the ability to lift fifty pounds as one of many physical requirements necessary for the job.

As a Gap employee, Perkins was qualified to receive benefits under the Gap's Group Plan No. 97980 (the "plan"). Prudential is the short-term disability insurer of the plan Gap sponsors. According to the terms of the plan, "total disability" exists when Prudential determines the covered employee: (1) due to sickness, accidental injury or both is not able to perform, for wage or profit, the material and substantial duties of his or her occupation; (2) is not working at any job for wage or profit; and (3) is under the regular care of a doctor. (Doc. #12, AR 135).[1]

On March 30, 2007, Plaintiff stopped working due to pain in her thigh and pelvic region, which was the apparent result of Plaintiff's congenital birth defect: short leg syndrome. Plaintiff has a prolonged history of back and leg pain. In 2001, she was diagnosed with sponylolesthesis at L-4, L-5 and at L-5, L-6 in her lower back. Plaintiff underwent a series of physical therapy treatments to no avail, causing her to submit to surgery. Plaintiff underwent intervertebral and posterior fusion surgery with Harrington rod implants in 2001 that relieved her back and leg pain temporarily. Plaintiff again had surgery in 2002 after scar tissue developed around the fusion, causing her a great deal of pain. The relief she experienced after surgery only lasted six months, at which time she underwent rigorous pain management via prescription drug therapy. Months later, the Harrington rods in her back shifted position and required replacement in 2004. Plaintiff

---

[1] All citations are to the administrative record, which was bates-stamped with the prefix "PRU-PERKINS." For ease of reference, the administrative record will be cited as "AR."

experienced relief from the rod replacement until March 2007, when she stopped working as a maintenance assistant at the Gap.

Plaintiff submitted a claim for short-term disability benefits on April 23, 2007, which Prudential approved on May 1, 2007. Prudential's approval allowed Perkins to recover short-term disability benefits from April 6, 2007, through April 26, 2007, the stated recovery period for Plaintiff's injury. Prudential advised Perkins that if her disability extended beyond April 26, 2007, she was required to provide additional medical information to support the continuation of benefits. Specifically, Prudential required further diagnostic test results, physical exam findings, or office visit notes from an attending physician. Plaintiff's treating physician, Dr. Ruth Hussey, supplied Prudential medical records from office visits she had with Perkins on February 27, March 12, March 30, and May 23, 2007, to support continuation of Plaintiff's disability benefits.

Plaintiff presented with hip pain on February 27, 2007, which seemingly originated from her surgery in 2002. Dr. Hussey prescribed an anti-inflammatory and recommended physical therapy for Perkins' short leg syndrome. Dr. Hussey's February records also indicate that Plaintiff was working out at the gym five days a week, wherein Dr. Hussey restricted Plaintiff's use of gym equipment to an elliptical machine rather than a bicycle. Dr. Hussey did not, however, document a lifting restriction during this visit.[2] On March 12, 2007, Plaintiff presented with sinus congestion and a sore throat, for which it was recommended she take Benadryl or Theraflu. On March 20, 2007, Plaintiff complained of

---

[2] In a letter dated June 20, 2007, Dr. Hussey asserted Plaintiff's lifting restriction was imposed in February, however, the record lacks any medical documentation to that effect nor did Dr. Hussey provide additional documentation to substantiate that the restriction was in fact imposed in February.

a severe headache. Dr. Hussey prescribed a Medrol dose pack, which Plaintiff refused to take for fear of gaining weight.

At Perkins' next visit with Dr. Hussey on May 23, 2007, she complained she was unable to lift fifty-pound bags to throw on the trucks at work. Dr. Hussey's May documentation is the first time the record reveals the imposition of a ten-pound lifting restriction for Plaintiff. Dr. Hussey's notes further state Plaintiff "[g]enerally she feels pretty good except she will never be able to lift heavy equipment unless she wants to risk herniated discs in her back." (Doc. #12, AR 59).

On June 6, 2007, Dr. Hussey's medical documentation was forwarded to Joseph Gilliam, a registered nurse at Prudential, for clinical review. After reviewing the records, Gilliam concluded that Dr. Hussey's restriction was merely preventative in nature, noting that the doctor's reason for the restriction was to prevent a herniated disc, yet "[i]t is possible to sneeze and herniate a disc. [Plaintiff] works out 5 days a week but [Plaintiff] was not restricted from doing that for fear of herniating a disc." (Doc. #12, AR 87). Moreover, Gilliam noted the lack of record evidence documenting the severity of Plaintiff's symptoms or loss of function that would prevent Plaintiff from performing medium work. As a result of Gilliam's report, Prudential affirmed its decision to terminate Plaintiff's short-term disability benefits effective April 26, 2007. To support its affirmance, Prudential cited the lack of documentation related to leg or back pain in March 2007, the lack of any referral to a specialist to treat such pain, and that all physical exams conducted were within normal limits. (Doc. #12, AR 126).

Plaintiff appealed Prudential's decision in a letter dated June 23, 2007, claiming she had been under a lifting restriction since March 30, 2007, due to leg and pelvic pain. (Doc.

#12, AR 53). Enclosed was a letter dated June 20, 2007, from Dr. Hussey that stated although Plaintiff was seen for sinusitis in March, her lack of documentation regarding Plaintiff's leg and back pain did not negate the existence of such pain, which allegedly began in February. (Doc. #12, AR 55). Dr. Hussey also stated that she imposed the ten-pound lifting restriction in February, a notation omitted from the March records because Dr. Hussey claims she did not want to "pad" Plaintiff's medical bill. (Doc. #12, AR 55).

During the appeal process, Prudential obtained medical records from Dr. Paul Lewis, Plaintiff's neurosurgeon, who saw Plaintiff on July 25, 2007. After her July visit, Dr. Lewis documented that Plaintiff was off of work due to recurring pain, but further noted Plaintiff needed to return to work for financial reasons and accordingly approved her return to work a few days later on July 29, 2007. He further recommended she return in two months for an x-ray of the lumbar spine. Plaintiff returned to work on July 29, 2007, for three days under no restrictions. On July 31, 2007, she experienced recurring pain and never returned to work.

Pursuant to Perkins' request for reconsideration, Thomas McDow, a registered nurse who worked for Prudential, reviewed Plaintiff's medical records, including the letter from Dr. Hussey on June 20, 2007, and the additional records forwarded by Dr. Lewis. After review, McDow concluded Plaintiff suffered from "intermittent low back and hip pain related to her congenital birth defect," and further that the medical records did not substantiate a loss of physical function that would prevent performance of a Medium OSHA job class. (Doc. #12, AR 91). McDow considered Dr. Hussey's letter, noting that pursuant to the American Medical Association's documentation guidelines "documentation is performed by exception meaning [a]ll abnormalities found on exam are documented. If a body system is not

5

documented on it is considered normal." (Doc. #12, AR 92). McDow further noted the absence of physical examinations that appropriately corresponded with the restrictions and limitations Dr. Hussey imposed. Consequently, McDow rejected Dr. Hussey's explanation that the lack of documentation was due to "bill padding." (Doc. #12, AR 55).

After review of Nurse McDow's report, Prudential again affirmed its decision to terminate Perkins' short-term disability. Prudential's decision was based on the lack of medical information substantiating an impairment beyond April 26, 2007, that would preclude Plaintiff from performing the material and substantial duties of her job. Prudential relied on the normal physical exams in her records and the lack of documentation substantiating the severity of the back and leg pain claimed. The instant action was filed after Prudential affirmed its decision a second time.

## II.    ANALYSIS

### A.    Standard of Review

It is well-established that federal courts review a plan administrator's denial of benefits *de novo*, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When a plan administrator is granted such discretionary authority, this Court reviews a decision to deny benefits under "'the highly deferential arbitrary and capricious standard of review.'" *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168-69 (6th Cir. 2003) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).

In this case, the language of the Plan expressly grants Prudential the discretionary

authority both to determine participant eligibility for benefits and to construe the terms of the plan: disability exists "when *Prudential determines* that" all of conditions of disability have been met. (Doc. #12, AR 135) (emphasis added). This language represents a sufficient grant of authority to trigger application of the arbitrary and capricious standard of review. *See, e.g., Noland v. Prudential Ins. Co. of Am.*, 187 F. App'x 447, 452 (6th Cir. 2006) (finding identical language sufficient to reserve discretionary authority and apply the arbitrary and capricious standard). Thus, the Court will review Defendant's denial of benefits under the arbitrary and capricious standard of review.

Under this highly deferential standard, the Court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager*, 88 F.3d at 381 (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)). Stated differently, the administrator's decision will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). This Court, however, may not "substitute its judgment for that of the administrator," *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 625 (6th Cir. 2007) (Boggs, C.J., concurring), but must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants, *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). That said, the arbitrary and capricious standard does not require this Court "merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). This Court's duty in determining whether the administrator acted arbitrarily and capriciously dictates "some review the quantity and quality of medical evidence and the opinions on

both sides of the issues." *McDonald*, 347 F.3d at 172.

Challenging Prudential's benefit determination as arbitrary and capricious, Plaintiff argues: (1) the decision was tainted by Prudential's conflict of interest; (2) Prudential failed to conduct an independent medical review of Plaintiff and instead relied solely on a file review by nurses; and (3) the decision was contrary to the objective medical evidence in the record. Each argument Plaintiff raises will be addressed in turn.

### B.     Discussion

#### 1.     Conflict of Interest

Plaintiff first agues Prudential's dual role in both funding and administering the plan presents a conflict of interest that renders its benefit determination arbitrary and capricious. When an insurer acts both as administrator, determining the eligibility of claims filed, and as payor of those claims, a conflict of interest exists. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003). The existence of this conflict, however, does not alter the standard under which the denial of benefits is reviewed; rather, the conflict of interest is considered as one factor in determining whether the decision to deny benefits was arbitrary and capricious. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 442-43 (6th Cir. 2005); *Davis* v. *Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989).

A conflict of interest renders a decision arbitrary and capricious only where there is "significant evidence" that the insurer was motivated by self-interest. *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998). A mere allegation of a conflict of interest will not suffice; "there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." *Jackson v. Metro. Life*, 24 F. App'x 290,

292 (6th Cir. 2001) (citing *Peruzzi*, 137 F.3d at 433). It is insufficient for a plaintiff to claim "nothing more than an inherent, structural conflict of interest." *Id.*

Other than simply pointing out that Prudential is both the administrator and payor of the plan at issue, Plaintiff fails to specifically identify significant evidence that would substantiate a claim that Prudential was motivated by self-interest in denying continued short-term disability benefits for Perkins. Plaintiff points only to Defendant's use of Prudential employees to effectuate the review process for both appeals, which Plaintiff claims precluded a full and fair review of her benefits claim. However, Prudential was well within its discretion to process the medical evidence by a hired health professional, provided the reviewing specialist for Plaintiff's second appeal was different from–and not subordinate to–the reviewing specialist for the first appeal who made the initial adverse benefit determination. 29 C.F.R. § 2560.503-1(h)(3)(2). Because Plaintiff failed to produce significant evidence that Prudential made its decision based on self-interest, this Court finds the existing conflict of interest insufficient to render the administrator's decision arbitrary and capricious.

### 2. File Review

Plaintiff next argues Prudential's method of evaluating her disability status was improper. Specifically, Plaintiff challenges Prudential's reliance on a file review of the medical evidence, and its reliance on the assessments of nurses, absent the opinion of any reviewing physicians.

The plan provides in relevant part:

> Prudential, at its own expense, has the right to examine the person whose loss is the basis of the claim. Prudential may do this when and as often as is reasonable while the claim is pending.

(Doc. #12, AR 143). Although this plan provision allows Prudential to commission an independent medical examination of the insured employee, the plan language does not expressly prohibit exclusive reliance on a file review. This Court will not read such a prohibition into the plan language. In the context of benefits determination, there is "nothing inherently objectionable about a file review." *Calvert*, 409 F.3d at 296. The failure to conduct a physical examination, however, where the right to do so is specifically reserved in the plan language "may raise questions about the thoroughness and accuracy of the benefits determination." *Id.* at 295. While Prudential's decision to rely on Gilliam and McDow's file review in lieu of a physical examination does not itself warrant rejection of Prudential's benefits determination, the Court considers it a factor in the overall assessment of whether Prudential's decision was arbitrary and capricious.

The record in the instant action demonstrates Prudential's review–and specifically that of nurses Gilliam and McDow–was comprehensive and undoubtedly thorough. At all relevant times, Prudential reviewed the most recent medical records available to it. For instance, Prudential reviewed records from May 25, 2007, for the determination it ultimately rendered on June 8, 2007. Moreover, Prudential revisited Perkins' condition numerous times as a result of her multiple appeals during which time all of her medical records were reviewed and discussed at length in both nurses' reports

To date, the Sixth Circuit has never held file review by a nurse an insufficient form of review. *Iley v. Metro. Life Ins. Co.*, 261 F. App'x 860, 864 (6th Cir. 2008); *Boone v. Liberty Life Assurance Co.*, 161 F. App'x 469, 473 (6th Cir. 2005). In upholding an administrator's decision to deny benefits based on the file review of a nurse, the Sixth Circuit found "there is nothing inherently arbitrary and capricious in allowing a nurse to

10

review a beneficiary's file." *Iley*, 161 F. App'x at 864.  That Perkins' file was reviewed by nurses rather than physicians does not render the administrator's decision arbitrary and capricious.  Nothing in the record indicates that either Gilliam or McDow were unqualified to provide a medical assessment as to Plaintiff's level of disability after reviewing her file.

Accordingly, Plaintiff's argument that Prudential should have conducted an independent medical examination and commissioned physicians to review her file is unpersuasive.  Given the discretionary nature of the plan language concerning physical examinations as merely permissible, Defendant was not required to conduct and independent medical examination of Plaintiff's physical condition. Neither was the Defendant required to have physicians review the medical record; Sixth Circuit precedent confirms file review by a nurse is not inherently objectionable.  As such, the file review factor in this case does not weigh in favor of reversing the administrator's decision as one that was arbitrary and capricious.

### 3. Decision Contrary to Objective Medical Evidence

Plaintiff further argues the benefits determination was arbitrary and capricious because Prudential failed to give a reasoned explanation of the evidence.   Specifically, Perkins contends Prudential overlooked significant periods of her medical history and ignored the opinion of her treating physician, Dr. Hussey, who restricted Plaintiff to lifting ten pounds.

Contrary to Plaintiff's assertion, Prudential did not overlook Perkins' extensive medical history.  In its September affirmance terminating benefits, Prudential discussed Plaintiff's prior medical history at length, which included three back surgeries beginning in 2001. Cognizant of Plaintiff's medical history, Prudential considered Plaintiff's Spina Bifida

diagnosis and short leg syndrome in its determination. Plaintiff's onset of leg and hip pain in February 2007, originated at the donor site of her 2002 back surgery, a fact also considered in Prudential's final benefit determination. That said, Prudential considered Plaintiff's physical examination and straight leg raise during her office visit with Dr. Hussey on February 27, 2007, both of which were within normal limits. Furthermore, the ten-pound lifting restriction was not documented until May 23, 2007, when Dr. Hussey imposed the limit until Plaintiff was to see Dr. Lewis in late July.

Prudential's September determination was based on Nurse McDow's review, which included medical records from neurosurgeon, Dr. Paul Lewis, detailing Plaintiff's past medical visits pre- and post-operation. (Doc. #12, AR 31-41). Nurse McDow also reviewed Dr. Hussey's June 20, 2007, letter, which sought to explain the absence of any references to Plaintiff's back pain during her February and March visits and further asserted the ten-pound lifting restriction had been in effect since February 2007. Despite the letter, Nurse McDow assessed Dr. Hussey's lifting restriction as merely preventative in nature when evaluated against the entirety of the medical record. Specifically, he noted the absence of any notation related to back pain or any imposition of lifting restrictions before May 2007, citing the American Medical Association's documentation guidelines that "all abnormalities to found on an exam are documented. If a body system is not documented [] it is considered normal." (Doc. #12, AR 92).

Within the context of ERISA, a treating physician's opinion is not entitled to greater weight. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Calvert*, 409 F.3d at 293-94. Furthermore, ERISA does not "impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Nord*, 538 U.S. at 831.

A plan administrator, however, may not arbitrarily refuse to acknowledge reliable evidence from a claimant's treating physician. *Id.* at 834.  Prudential credited Dr. Hussey's ten-pound lifting restriction, but deemed the restriction one that was merely preventative based on Gilliam and McDow's reports.  Read in conjunction with the other medical evidence documenting normal physical exams, and a complete lack of any records documenting the severity of Plaintiff's symptoms or a loss of functioning consistent with the inability to perform a medium OSHA job class, the administrator's decision to deny continuation of benefits was rational despite Dr. Hussey's weight-lifting restriction.  After reviewing the medical evidence, the Court concludes the record supports the administrator's benefit determination was rational in light of Prudential's plan provisions, and was not arbitrary and capricious.

### III.   CONCLUSION

Therefore, for the reasons stated herein,

**IT IS ORDERED AS FOLLOWS:**

1. Plaintiffs' Motion to Reverse the Administrative Decision (Doc. #13) is hereby **DENIED**;

2. This matter is hereby **DISMISSED** with prejudice and **STRICKEN** from the docket of the Court;

3. A Judgment affirming the administrative decision will be entered contemporaneously herewith.

This 19th day of January, 2010.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Covington\2-08-160-MOO.wpd